## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW PAUL STEIN, | ) | CASE NO. 1:07-cv-03696 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHELE EBERLIN, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner Matthew Stein ("Stein"), *pro se*, challenges the constitutionality of his

conviction in the case of *State v. Stein*, Richland County Court of Common Pleas Case No. 2005-

CR-0224.  Stein filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on

December 3, 2007 with the United States District Court for the Northern District of Ohio.  On

September 9, 2008, Warden Michele Eberlin ("Respondent") filed her Answer/Return of Writ.

(Doc. No. 9.)  Stein filed a Traverse on September 18, 2008.  (Doc. No. 11.)  This matter is

before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in

detail below, it is recommended that Stein's petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts "shall be presumed to be correct."

28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate

court summarized the facts underlying Stein's conviction as follows:

[*P2]  On October 27, 2003, Aiden Stein was born to Arica Heimlich and Appellant Matthew Stein.  Aiden was born with his umbilical cord around his neck, but he suffered no trauma as a result. For the first four and one-half months of his life, Aiden was generally a normally developing baby boy. On March 14, 2004, Arica, his mother, woke Aiden up and fed him at approximately 6:30 AM. When she left for work at 7:43 AM, leaving Aiden in appellant's care, the baby appeared fine.  However, at about 10:30 AM that day, appellant banged on the door of his neighbor, Gerald Holland, stating that Aiden had stopped breathing.

[*P3]  Holland immediately took the baby from appellant's arms and checked him for signs of choking.  Finding nothing, Holland began performing CPR and directed his girlfriend to call 911. Paramedics arrived about five minutes later and transported Aiden to Med Central Hospital.  The emergency room physician, Dr. Anthony Midkiff, was told by the paramedics and appellant that the baby had gagged while nursing from a bottle.  Dr. Midkiff later testified that he did not see the usual symptoms of choking in Aiden during the examination.

[*P4]  Aiden was intubated and transported by helicopter to Akron Children's Hospital.  Dr. Daryl Steiner thereupon took over treatment of Aiden.  A CT scan revealed evidence of extensive bleeding around Aiden's brain, as well as indications of "older" blood in the baby's subdural region.  Dr. Steiner further observed indication of brain swelling and discovered a skull fracture on the left side of Aiden's skull.  Dr. Steiner also observed Aiden had severe retinal hemorrhages, not in the nature of hemorrhages caused by birth.  His eventual diagnostic conclusion was that Aiden had suffered brain damage caused by physical abuse.  Two other examining physicians at Akron Children's, Dr. Vivek Malhotra and Dr. John Pope, concurred in the diagnosis.

[*P5]  In the meantime, the Mansfield Police Department and Richland County Children's Services began an investigation concerning Aiden's injuries, which had left him in a permanent vegetative state.  On April 7, 2005, the Richland County Grand Jury indicted appellant on one count of felonious assault and one count of child endangering, both felonies of the second degree.  The matter proceeded to a jury trial which commenced on August 25, 2005, and lasted until September 7, 2005.  The State's theory of the case was premised on Shaken Baby Syndrome.  At the conclusion of the trial, the jury found appellant guilty on both counts of the indictment.

 [*P6]  A sentencing hearing was conducted on September 12, 2005.  The trial court thereupon imposed the statutory maximum sentence of eight years in prison for the offense of felonious assault.  The court further found the child endangering charge to be an allied offense of similar import; hence, appellant was not

sentenced for said offense.

*State v. Stein*, 2007 Ohio App. LEXIS 1061, 2007-Ohio-1153 at ¶¶2-6 (Ohio Ct. App. Mar. 14, 2007).

## II.  Procedural History

### A.    Conviction

The Richland County Grand Jury charged Stein with one count of felonious assault in violation of Ohio Revised Code ("O.R.C.") § 2903.11(A)(1) and one count of child endangerment in violation of O.R.C. § 2919(B)(1).  (Doc. No. 9, Exhs. 1 & 3.)  On September 7, 2005, a jury found Stein guilty as charged.  (Doc. No. 9, Exh. 4.)  On September 13, 2005, the trial court sentenced Stein to a term of eight years imprisonment on Count One.  He did not receive a sentence for Count Two as the offense was deemed an allied offense of similar import. (Doc. No. 9, Exh. 4.)

### B.    Direct Appeal

On October 13, 2005, Stein, represented by new counsel, filed a timely Notice of Appeal with the Court of Appeals for the Fifth Appellate District ("state appellate court").  (Doc. No. 9, Exh. 5.)  On August 21, 2006, Stein raised one assignment of error:

> The ineffectiveness of defense counsel, violated Appellant's right to counsel
> under the Sixth Amendment to the United States Constitution and Article I,
> S[ection] 16 of the Ohio Constitution. (Tr. pp. 12, 39, 85-87, 154-156, 222, 246).[1]

(Doc. No. 9, Exh. 16.)  On March 14, 2007, the state appellate court affirmed Stein's conviction.

---

[1]  Specifically, Stein alleged that defense counsel was ineffective for: (1) failing to object
to the seating of jurors who had alleged connections to prosecution witnesses; and
(2) failing to object to the trial court's denial of a hearing to address an allegation of jury
misconduct.  (Doc. No. 9, Exh. 16.)

(Doc. No. 9, Exh. 18.)

Stein, through counsel, filed a timely appeal with the Supreme Court of Ohio.  (Doc. No.

9, Exh. 21.)  Stein set forth the following proposition of law:

> The gross ineffectiveness of defense counsel, who failed to exercise peremptory
> challenges against three jurors related, directly or indirectly, to the prosecution in
> a highly publicized case, violated Appellant's right to counsel under the Sixth
> Amendment to the United States Constitution and Article I, s[ection] 16 of the
> Ohio Constitution. (Tr. pp. 12, 39, 85-87, 154-156, 222, 246).

(Doc. No. 9, Exh. 21.)  On July 25, 2007, the Supreme Court of Ohio dismissed the appeal as not

involving any substantial constitutional question.  (Doc. No. 9, Exh. 23.)

## C.   Postconviction Relief and Other State Court Filings

While his direct appeal was pending, Stein, through counsel, filed a motion for a new trial

pursuant to Ohio Crim. R. 33(A)(2) on March 9, 2006 in which he alleged juror misconduct.

(Doc. No. 9, Exh. 6.)  The trial court overruled Stein's motion finding that it was untimely and it

did not qualify for the exemption allowed for motions based on newly discovered evidence.

(Doc. No. 9, Exh. 8.)

On December 3, 2007, Stein, *pro se*, filed a motion for relief from judgment pursuant to

Civil Rule 60(B)(4).  (Doc. No. 9, Exh. 24.)  In his motion, Stein asserted that his sentence

violated *Blakely v. Washington*, 542 U.S. 296 (2004), *State v. Foster*, 109 Ohio St.3d 1,

2006-Ohio-856, 845 N.E.2d 470 (Ohio 2006), and *State v. Payne*, 114 Ohio St. 3d 502, 2007-

Ohio-4642, 873 N.E.2d 306 (Ohio 2007).  *Id*.  The trial court construed Stein's motion as a

petition for post-conviction relief and denied it as untimely.  (Doc. No. 9, Exh. 26.)

On March 13, 2008, Stein, *pro se*, appealed the trial court's denial of his petition for post-

conviction relief to the state appellate court.  (Doc. No. 9, Exh. 27.)  The state appellate court

-4-

found that the trial court had appropriately recast Stein's motion as a post-conviction petition and did not err by denying it.  (Doc. No. 9, Exh. 30.)  The court found that Stein's motion was untimely and the issues raised therein were barred by *res judicata*.  *Id*.

**D.    Federal Habeas Petition**

Stein filed a Petition for Writ of Habeas Corpus raising three grounds for relief which are summarized as follows:

> GROUND ONE: He was denied effective assistance of trial counsel due to counsel's failure to safeguard his right to a trial before an impartial jury.
>
> GROUND TWO: He is actually innocent of the crimes for which he was convicted.
>
> GROUND THREE: His sentence violated clearly established federal law based on the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004).

(Doc. No. 1.)

## III.  Exhaustion and Procedural Default

**A.    Exhaustion Standard**

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17

F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B.    Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id*.

Second, a petitioner may also procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion.

---

[2]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at

-7-

138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

**C.    Analysis**

Respondent contends that Stein has procedurally defaulted the *Blakely* claim contained in ground three of Stein's petition. (Doc. No. 9 at 7.)  After reviewing the memoranda filed by Stein on direct appeal before both the state appellate court and the Ohio Supreme Court, it is clear that

he never presented this issue on direct appeal.[3]  (Doc. No. 9, Exhs. 16 & 21.)  Rather, Stein first

raised this issue in a motion for relief from judgment which the Ohio courts construed as a

petition for post-conviction relief.  (Doc. No. 9, Exhs. 24-29.)  Applying the four-part *Maupin*

test established by the Sixth Circuit to Stein's habeas petition, it is clear that he neither complied

with the requirement that an appellant raise all available issues on direct appeal, nor did he raise

the issues in a timely manner under O.R.C. § 2953.21.  Second, the state appellate court actually

enforced the procedural sanctions, as it found that Stein's motion was untimely and the issues

raised therein were barred by *res judicata*.  (Doc. No. 9, Exh. 30.)  The doctrine of *res judicata*

applies to constitutional claims that could have been raised in a direct appeal, as well as those

that could have been raised in a post conviction proceeding.  *Norris v. Schotten*, 146 F.3d 314,

332 (6th Cir. 1998) (*citing State v. Combs*, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994) (holding

that *res judicata* precludes post-conviction relief to address constitutional claims that could have

been raised on direct appeal from the conviction and sentence)).  The Sixth Circuit has explicitly

recognized *res judicata* as an adequate and independent basis for procedural default.  *Norris*, 146

F.3d at 332; *Rust*, 17 F.3d at 161.

As such, Stein's *Blakely* claim is waived unless he can demonstrate "cause" and

"prejudice" sufficient to excuse his default.  *Rust*, 17 F.3d at 161-62.  In his traverse, Stein

argues that he did not raise his *Blakely* claim on direct appeal due to appellate counsel's alleged

ineffectiveness.  (Doc. No. 11.)  Stein's argument is unavailing.  "'[A] claim of ineffective

---

[3]  The application of *Blakely* to Ohio's sentencing statutes was clarified by the Ohio
Supreme Court's *Foster* of February 27, 2006.  As Stein did not file his appellate brief
until August 21, 2006, it cannot reasonably be argued that the such a claim was
unavailable at the time of Stein's direct appeal.  (Doc. No. 9, Exh. 26.)

-9-

assistance,' ... generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'"  *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (*quoting Carrier*, 477 U.S. at 489).  Stein never properly raised an ineffective assistance of appellate counsel claim before the state courts and such a claim is itself defaulted.[4] Thus, appellate counsel's alleged ineffectiveness cannot serve as cause to excuse Stein's procedural default.

Finally, Stein also argues that he is actually innocent.  As stated above, procedural default may be excused where a petitioner is actually innocent.[5]  *See Coleman*, 501 U.S. at 749-50. However, conclusory statements are insufficient as a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Jones v. Bradshaw*, 489 F.Supp.2d 786, 807

---

[4]  Stein contends that he could not file an application to reopen his direct appeal pursuant to Ohio App. R. 26(B) challenging appellate counsel's effectiveness, because appellate counsel "took it upon himself to proceed to discretionary review." (Doc. No. 11.)  Stein believes that such a filing prohibited him from seeking to reopen his appeal.  Stein misconstrues Ohio Supreme Court Practice Rule II, § 2(D).  Although perfection of an appeal with the Supreme Court does indeed divest the state appellate court of jurisdiction, the rule creates an express exception for "an application timely filed with the court of appeals pursuant to App. R. 26."  *See* Ohio Supreme Court Practice Rule II, § 2(D).

[5]  It seems inconsistent to consider an actual innocence argument as a gateway to excuse the procedural default of a *Blakely* challenge to a sentence rather than the underlying conviction itself.  Under these circumstances, even a meritorious actual innocence claim would not provide a potential remedy for the wrongful conviction, as only the sentence itself would be subject to review.  Indeed, the Supreme Court has declined to decide whether the actual innocence exception applies to a claim of a non-capital sentencing error.  *See Dretke v. Haley*, 541 U.S. 386 (2004); *accord Grannan v. United States*, 2008 U.S. Dist. LEXIS 76693 at *18 (E.D. Tenn. Sept. 30, 2008); *Hasset v. Belleque*, 2008 WL 5046317 (D. Or. Nov. 21, 2008).  Nonetheless, the Court will address whether Stein has satisfied the actual innocence standard.

(N.D.Ohio 2007).  The Supreme Court has cautioned that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'"  *Schlup*, 513 U.S. at 321.  Stein offers "new" evidence in the form of a written description of a conversation concerning the victim between Dr. Carl Martino and the author of the description, Jim Gutbrod, in which the former supposedly indicated to an absolute certainty that there was no right parietal bone fracture.  (Doc. No. 1, Exh. 5.)  Dr. Martino is also alleged to have articulated the possibility that the victim's subdural hemorrhaging was caused during birth.  *Id*.  Notably, this conversation occurred prior to trial and Dr. Martino did not testify.  *Id*.  Stein also draws the Court's attention to two letters from Dr. Patrick Barnes, both post-dating the trial, stating that parietal cranial irregularities in the victim's skull likely represent suture variants rather than fractures and that the victim's injuries are "not characteristic of, or specific for, nonaccidental injury."  (Doc. No. 1, Exh. 7; Doc. No. 5, Exh. 5.)  Finally, Stein supplemented his petition with a letter dated February 17, 2008 from Ronald Uscinski, M.D., who indicated that he had been contacted by Dr. Paul Byrne "quite some time ago."[6]  (Doc. No. 5, Exh. 8.)  Dr. Uscinski opined that the victim suffered from a chronic subdural hematoma that began well before the events leading to the charges against Stein and "quite likely as far back as birth."[7]  *Id*.

Stein's argument is strikingly similar to one recently addressed by the Sixth Circuit in *Howard v. Wolfe*, 199 Fed. Appx. 529 (6th Cir. 2006).[8]  Therein, the petitioner, who was

---

[6]  Dr. Paul Byrne testified on behalf of the defense at trial.

[7]  Stein also references Dr. Anthony Midkiff's report but concedes it is immaterial.  (Doc. No. 1.)

[8]  Although the *Howard* court found that the petitioner's actual innocence claim was procedurally defaulted, this finding appears to have been unnecessary, as discussed in Part IV, Section B, *infra*, in light of more recent decisions stating that free-standing

-11-

convicted of child endangerment, argued that his procedural default should be excused due to his alleged actual innocence based on "new" medical opinions.

> The evidence relied upon by Howard in support of his actual innocence claim simply does not rise to this extraordinary standard....
>
> With respect to the new expert opinions, the district court found that Howard failed to argue or establish that these experts were unavailable to him at the time of trial.  In fact, the record reflects that defense counsel relied on expert witness testimony at trial who essentially provided the same opinion as the "new" experts - that the victim's injury could have existed since birth.  The prosecution, on the other hand, relied on its own expert witness to support its position that the victim's injuries were recently incurred and were a result of shaking.  Clearly, the jury was presented with opposing theories and relied on the prosecution's evidence pointing to shaken baby syndrome in determining Howard's guilt beyond a reasonable doubt.  The district court determined that the testimony of the two additional expert witnesses would be merely cumulative.
>
> A review of the "new" evidence, independently and collectively, simply does not lead to the conclusion that it is more likely than not that no reasonable juror would have found Howard guilty beyond a reasonable doubt....  Howard's reliance on the "new" expert reports fails to meet the actual innocence standard.  Accordingly, the district court did not err in denying Howard's claim for federal habeas relief based on actual innocence.

*Howard*, 199 Fed. Appx. at 533-534.

Similarly in this matter, Stein has failed to establish that these experts were unavailable to him at the time of trial.  Furthermore, nothing in the letters of Dr. Barnes or Dr. Uscinski, or the reported conversation with Dr. Martino, adds anything new to the evidence that was presented at trial.  Dr. Paul Byrne testified on behalf of the defense at length concerning the victim's medical problems since birth.  (Tr. 1494-1616.)  Dr. Byrne offered his expert opinion that the victim's medical state was caused by a subdural hematoma that occurred at birth and persisted as a chronic condition.  (Tr. 1555.)  Thus, the so-called "new" evidence presented by Stein is not, in

_____

actual innocence claims are not cognizable upon habeas review.

-12-

fact, new and would merely have been cumulative to the testimony of Dr. Byrne. Based on *Howard*, this evidence is insufficient to meet the actual innocence standard. It appears that Stein would have this Court give weight to the various medical opinions based on different levels of expertise. However, it is not this Court's function to substitute its own opinion for that of the fact-finder. Stein has failed to establish his actual innocence, as the Court cannot conclude that no reasonable juror would have found Stein guilty beyond a reasonable doubt considering the "new" evidence. As such, Stein's procedural default on his *Blakely* claim is not excused.

### IV. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent"

-13-

also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A.      Ground One: Ineffective Assistance of Trial Counsel**

In ground one of his petition, Stein argues that his trial counsel was ineffective for failing to effectively challenge the seating of certain jurors – namely jurors Allen Schwartz and Lindsey Smith.  (Doc. No. 1.)

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not

-14-

functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The state appellate addressed the issue as follows:

*Seating of Jurors Schwartz and Smith*

Appellant first argues that his trial counsel was ineffective for failing to object to the seating of two jurors, Allen Schwartz and Lindsey Smith, who he alleges had "direct connections" to certain witnesses in the case. Appellant's Brief at 5.

"[T]he selection and qualification of jurors are largely under the control of the trial court and, unless an abuse of discretion is clearly shown with respect to rulings thereon, they will not constitute ground for reversal." *State v. Trummer* (1996), 114 Ohio App.3d 456, 461, 683 N.E.2d 392, citing *Berk v. Matthews*

-15-

(1990), 53 Ohio St.3d 161, 559 N.E.2d 1301.

Appellant herein chiefly raises the issue of "implied bias," a principle we have previously addressed only in limited fashion.  *See State v. Winegardner* (Feb. 1, 1984), Licking App.No. CA-2958, 1984 Ohio App. LEXIS 8965.  In *State v. Vasquez*, Franklin App.No. 03AP-460, 2004 Ohio 3880, the court recognized: "Because the bias of a juror will rarely be admitted by the juror himself, partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it, it necessarily must be inferred from surrounding facts and circumstances."  *Id.* at P 14, quoting *McDonough Power Equipment, Inc. v. Greenwood* (1984), 464 U.S. 548, 558, 104 S. Ct. 845, 849, 78 L. Ed. 2d 663, Brennan, J., concurring (internal quotations and additional citations omitted).

"[C]ourts have been inclined to presume bias in 'extreme' situations where the prospective juror is connected to the litigation at issue in such a way that is highly unlikely that he or she could act impartially during deliberations." *Vasquez*, supra, at P 14.  Nonetheless, a juror " * * * ought not to suffer a challenge for cause when the court is satisfied from an examination of the prospective juror or from other evidence that the prospective juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial."  *State v. Duerr* (1982), 8 Ohio App.3d 404, 8 Ohio B. 526, 457 N.E.2d 843, paragraph two of the syllabus.

The record indicates Juror Allen Schwartz is employed as an administrator at Med Central Hospital, where Aiden was first taken on March 14, 2004.  Several testifying physicians from Med Central testified at trial.  One of them, Dr. Anthony Midkiff, was a work acquaintance of Schwartz.  Upon being questioned by the court during voir dire, Schwartz stated that his acquaintance with Dr. Midkiff would not influence his judgment regarding the physician's testimony. Tr. I at 40.  Schwartz also stated he could think of no reason that he would not want someone like himself on the jury, were he to be in appellant's place.  Tr. I at 154-156.  Schwartz also noted he was aware that appellant had filed a lawsuit against the hospital, but denied it would impact his jury service. [Note 2] Tr. at 155.

[Note 2]  We note appellant's trial counsel did challenge Schwartz because of his knowledge of the lawsuit; however, the court overruled said challenge.  Tr. I at 246-247.

The second instance cited by appellant centers on Juror Lindsey Smith.  She indicated during voir dire that her children are seen by pediatrician Dr. Brad Olson, another Med Central physician, who had assisted in Aiden's care. Appellant suggests that Smith was dependent on Dr. Olson's expertise to treat her

-16-

own children, and this would create concern in her mind were she to consider the possibility of Dr. Olson being mistaken in Aiden's treatment.  Nonetheless, Smith stated that she would not treat Dr. Olson's testimony in a different manner than the other witnesses, and that she would be objective in listening to Dr. Olson on the stand.  Tr. I at 39-40.  Smith indicated that she had seen a picture of Aiden, but that it would not affect her judgment, and she otherwise had not experienced any pre-trial publicity.  Tr. I at 85-86.

Having reviewed the pertinent voir dire portions of the trial transcript, we are unable to conclude the trial court would have abused its discretion in seating Jurors Schwartz and Smith, such that we find no violation of trial counsel's duty to appellant.  *Duerr*; *Bradley*, supra.  We therefore find no merit in appellant's ineffective assistance claims in regard to trial counsel's performance during voir dire.

*Misconduct of Juror Smith*

Appellant next argues that trial counsel was ineffective for failing to object to the court's denial of a hearing on the allegation of juror misconduct by Juror Smith.

Toward the end of the trial, the court obtained information that Smith had allegedly had conversations about the case with an individual named Shawn Berendt at her place of employment, Flex-Pak, Inc.  When confronted by the trial judge, Smith repeatedly denied knowing anyone by that name. Tr. VIII at 1876.  In response to further questioning, Smith stated she had only mentioned appellant's name at work, just one time.  Tr. VIII at 1877.  She denied making any statements concerning the evidence in the case.  *Id*.  Although the court thereafter allowed each side the opportunity to explore the conversation further, neither the prosecutor nor defense counsel chose to do so.  About six months after the trial, appellant's counsel moved for a new trial on the alleged misconduct, which the court denied.

"Conversations by a third person with a juror during the progress of a trial for the purpose of influencing the verdict may invalidate the verdict, but where there is nothing in the record to demonstrate that the decision might have been influenced by such conversation, the refusal of the trial court to grant a new trial will not be disturbed."  *State v. Hipkins* (1982), 69 Ohio St.2d 80, 83, 430 N.E.2d 943, citing *State v. Higgins* (1942), 70 Ohio App. 383, 36 Ohio Law Abs. 44, 41 N.E.2d 1022.  Furthermore, as an appellate court reviewing a claim of ineffective assistance, we "must keep in mind that different trial counsel will often defend the same case in different manners."  *State v. Samatar*, 152 Ohio App.3d 311, 787 N.E.2d 691, 2003-Ohio-1639, ¶88.

Upon review of the record, we are unpersuaded that appellant was prejudiced by

-17-

his trial counsel's performance, in regard to the issue of Juror Smith's third-party contact, to the degree that the outcome of the trial would be suspect. *Strickland*, supra.

*State v. Stein*, 2007 Ohio App. LEXIS 1061, 2007-Ohio-1153 ¶¶17-21 (Ohio Ct. App. Mar. 14, 2007).

Defense counsel challenged Schwartz for cause on the basis that he worked as an administrator at the hospital where Stein's son was treated and that Schwartz was aware Stein had filed suit against that same hospital. (Tr. 246.) The court overruled the challenge because Schwartz indicated that he could be objective despite such knowledge. *Id*. The state appellate court held that because the trial court seating the two jurors was not an abuse its discretion, defense counsel's performance during *voir dire* was not deficient. *Stein*, 2007-Ohio-1153 at ¶17. While Stein acknowledged that defense counsel did challenge the seating of juror Schwartz on the basis of Stein's lawsuit against the hospital and Schwartz's status as an employee, Stein asserts that the challenge was "superficial" and that counsel failed to challenge his seating based on his federal right to a fair trial. (Doc. No. 1.) Stein's argument is unpersuasive, as defense counsel's challenge was based on the only issues that could have imputed bias to Schwartz. Thus, the state appellate court's finding that defense counsel's conduct was not constitutionally defective was neither contrary to nor an unreasonable application of clearly established federal law.

Furthermore, though Stein does not specifically argue here that trial counsel should have exercised a peremptory challenge against Schwartz, it bears noting that counsel exercised all of his allotted peremptory challenges. (Tr. 245-48.) The decision to exclude one potential juror over another squarely falls into the category of trial strategy and mere disagreements with

counsel's strategic decisions do not support a claim of ineffective assistance of counsel.  Defense

counsel chose to exercise his peremptory challenges against the following prospective jurors:

Carolyn Warrens, a prison nurse who had read about the case in the local paper and expressed

concern that the child was being kept alive by a respirator; Kenneth Starbuck, a retired

supervisor from the Ohio Adult Parole Authority who knew two of the prosecution's law

enforcement witnesses; Barbara Shaker, a pediatric nurse who had handled many child abuse

cases and whose husband is a pediatrician; and, Marlene Burkhalter, who cared for her two

granddaughters.  (Tr. 31-32, 36, 56-62, 102-06, 113-18, 135-37.)[9]  This Court is in no position to

find that counsel's strategic use of his peremptory challenges was unreasonable or that a

challenge should have been used against juror Schwartz in lieu of one of the above potential

jurors.  As such, the Court cannot say that counsel was ineffective for not peremptorily

eliminating juror Schwartz after failing on a challenge for cause.

Stein also alleges that defense counsel should have challenged the seating of juror Smith,

but does not explain the basis for a *voir dire* challenge.  (Doc. No. 1.)  The *voir dire* transcript

indicates that Smith's children were seen by Dr. Olson, who had assisted in the victim's care and

also testified at trial.  (Tr. 39-40.)  However, Smith stated that she could be objective and would

not extend deferential weight to Dr. Olson's testimony.  *Id.*  She also stated that she had not been

exposed to any pre-trial publicity, save for a picture of the victim, which she indicated would not

affect her judgment.  (Tr. 85-86.)  Defense counsel's failure to challenge the seating of Smith for

---

[9]  It appears from the record that each side was also permitted to exercise one peremptory
challenge against an alternate, which defense counsel used to eliminate Melinda Garrett
who indicated that she once met the assistant prosecutor working on the case.  (Tr. 34,
178-80.)

-19-

cause does not strike the Court as an egregious omission, especially after the Court denied a stronger challenge against juror Schwartz.  Stein has not pointed to any clearly established federal law suggesting that a failure to challenge a juror under these circumstances renders counsel's representation inadequate.  Further, the Court cannot find that counsel's strategic decision not to exercise a peremptory challenge against Smith was unreasonable.  As such, the state appellate court's ruling was neither contrary to nor an unreasonable application of clearly established federal law.

Finally, Stein argues that defense counsel was ineffective for failing to object to the trial court's decision not to hold a hearing concerning alleged juror misconduct by Smith.[10]  The court did, however, address the issue on the record.  (Tr. 1876-78.)  In a discussion with the trial judge, Smith denied making any such statements.  *Id*.  Smith stated that she mentioned at work that she was a juror on the case but did not discuss the evidence with anybody.  *Id*.  Both defense counsel and the prosecution declined to question Smith further.  (Tr. 1878.)  The state appellate court found that conversations by a third person with a juror during a trial may invalidate a verdict, but not in situations where there is nothing in the record indicating that the verdict might have been influenced by such conversation.  *Stein*, 2007-Ohio-1153 at ¶20.  Even if the Court were to construe Berendt's affidavit as factually accurate, it does not suggest that he influenced juror Smith, but rather only that Smith was relaying her opinion of the evidence.  Furthermore, defense counsel's decision not to inquire further was not unreasonable under the circumstances.

---

[10]  The allegation of misconduct refers to a conversation reported by a co-worker of juror Smith, Sean Berendt, while the trial was still in progress.  According to Berendt, Smith told him that "the State of Ohio had no evidence upon which to convict the defendant Matthew Stein of any crime against his son Aiden Stein."  (Doc. No. 1, Exh. 9.)

If Smith had indeed stated that she believed the evidence was insufficient to convict Stein, defense counsel may have made a strategic decision to forego any further inquiry in order to keep a juror that was potentially favorable to the defense.  Alternatively, counsel may have thought that an unsuccessful attempt at removal might have alienated the juror.  While it is easy to second guess counsel's decision after the verdict, the strategy was not unreasonable at the time.  As such, the state court's decision was neither contrary to nor an unreasonable application of clearly established federal law.

Therefore, ground one of Stein's petition is without merit and should be denied.

**B.      Ground Two: Actual Innocence**

Stein also attempts to raise an actual innocence claim as a distinct basis for habeas relief rather than merely as a justification for his procedural default.  (Doc. No. 1.)  The Sixth Circuit has "refused to recognize a theoretical 'free-standing' actual innocence claim."  *See D'Ambrosio v. Bagley*, 527 F.3d 489, 498 n. 6 (6th Cir. 2008); *see also Schlup v. Delo*, 513 U.S. 298, 315 (1995) (A petitioner's actual innocence claim is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.") (*quoting  Herrera v. Collins*, 506 U.S. 390, 404 (1993)); *Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent."); *Davis v. Burt*, 100 Fed. Appx. 340, 350 (6th Cir. 2004).  Even if such a claim were cognizable, Stein would be required to present the court with "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

-21-

critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324;  *See Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007).  The evidence proffered by Stein in the way of medical opinions is not *new* evidence.  At trial, defense counsel elicited expert testimony suggesting that the victim's injuries were longstanding and were not the result of abuse.  Thus, the evidence Stein portrays as new is merely cumulative of evidence presented at trial.  *See Howard*, 199 Fed. Appx. at 534.  Moreover, to the extent any material differences exist between the expert testimony given at trial and the so-called new medical opinion evidence, it could have been obtained at the time of trial.  As such, Stein's claim is without merit.

### V.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Stein's Petition be DENIED.

s/ Greg White_____<br>
U.S. MAGISTRATE JUDGE

Date: December 22, 2008

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**